**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| VIVIAN MOREIN | CIVIL ACTION NO. 6:25-1182 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| COSTCO WHOLESALE CORP | MAGISTRATE JUDGE WHITEHURST |

## MEMORANDUM RULING

Before the Court is Costco Wholesale Corp.'s Motion for Summary Judgment. See Record Document 32. The motion has been opposed. See Record Document 38. Costco's reply to Vivian Morein's opposition was filed on July 7, 2026. See Record Document 43. The motions are now ripe for ruling.

Costco's Motion for Summary Judgment asserts Morein's claims must be dismissed, and summary judgment granted because Morein has no evidence to satisfy the essential elements of La. R.S. § 9:2800.6(B)(2). See Record Document 32-1. For the reasons stated below, Costco's Motion for Summary Judgment is **DENIED**.

## BACKGROUND

Morein filed her initial complaint in the 15th Judicial District Court of Louisiana seeking damages from Costco for injuries allegedly sustained as a result of an incident that occurred at a Costco Store in Lafayette, Louisiana, on July 28, 2024. See Record Document 1-2. The case was removed to this Court under 28 U.S.C. § 1447(b), based on diversity jurisdiction pursuant to 28 U.S.C. § 1332 on August 25, 2025. See Record Document 9.

On June 15, 2026, Costco filed a Motion for Summary Judgment (Record Document 32) alleging that Morein's claims must be dismissed, and summary judgment granted because Morein has no evidence to satisfy the essential elements of La. R.S. § 9:2800.6(B)(2). See Record Document 32-1. Morein's Opposition to Costco's Motion for Summary Judgment was filed on June 30, 2026. See Record Document 38. Costco's reply was filed on July 7, 2026. See Record Document 43. On August 10, 2026, Morein filed a Supplemental Memorandum in Opposition of Costco's Motion for Summary Judgment. See Record Document 53. Costco filed a supplemental reply in support of its Motion for Summary Judgment on August 17, 2026. See Record Document 60.

## LAW AND ANALYSIS

Summary judgment is appropriate only if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Thompson v. Microsoft Corp., 2 F.4th 460, 467 (5th Cir. 2021) (citation omitted). In determining whether a factual issue exists, the Court must "view the facts and draw reasonable inferences in the light most favorable to the nonmoving party." Rayborn v. Bossier Par. Sch. Bd., 881 F.3d 409, 414 (5th Cir. 2018). In doing so, the Court "may not make credibility determinations or weigh competing evidence." Liedtke v. City of Austin, 185 F.4th 560, 570 (5th Cir. 2026).

The moving party bears the initial burden of "informing the Court of the basis of its motion" and identifying portions of the record that "demonstrate the absence of a genuine issue of material fact." Adams v. Travelers Indem. Co. of Conn., 465 F.3d 156, 163 (5th

Cir. 2006) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)). Once the movant meets this burden, the nonmoving party must identify "specific facts" in the record that show "a genuine issue for trial." Id. at 164 (quoting Celotex, 477 U.S. at 324. "If the nonmoving party fails 'to offer proof concerning an essential element of its case,' all other facts are necessarily immaterial and summary judgment is appropriate." Liedtke, 185 F.4th at 571 (quoting Adams, 465 F.3d at 164). Importantly, the nonmovant "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" Turner v. Baylor Richardson Medical Center, 476 F.3d 337, 343 (5th Cir. 2007) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).

Here, Morein's claims arise under La. R.S. § 9:2800.6(B)(2). See Record Document 32-1. Pursuant to La. R.S. § 9:2800.6(B)(2), a claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following: (1) the condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable; (2) the merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence; and (3) the merchant failed to exercise reasonable care. Costco asserts that Morein has no evidence to satisfy the essential elements of La. R.S. § 9:2800.6(B)(2). See Record Document 32-1.

Specifically, Costco argues there is no evidence it created the alleged condition or had actual or constructive knowledge of the condition that caused Morein's harm. See id. Costco claims Morein "has no evidence to establish the length of time the liquid was present on the floor prior to the incident", "no evidence demonstrating that the liquid had

marks or other characteristics to suggests that it had been on the ground for some period of time", "no evidence to suggest how the liquid came to be on the floor", "no evidence to suggest that any Costco employees knew of or caused the spill." Record Document 32-1.

However, the facts, read in the light most favorable to the nonmoving party, indicate that a reasonable jury could return a verdict for the nonmoving party. On July 28, 2024, Morein, accompanied by her husband, Michael Morien, and grandchildren, stopped at Costco's food court for lunch. See Record Document 38. When making her way to a table, Morein allegedly slipped on a liquid substance and fell to the floor. See id. Costco's surveillance footage captured the entire incident. See Record Document 32-7. The recording begins at 12:56:21 P.M. and depicts the food court seating area, including the table near the soda machine where Morein fell, for exactly one hour. See id. At approximately 1:28:55 P.M., Morein is seen falling to the ground. See id. The footage further depicts Morein's right hand touching the floor. See id. Morein later testified she felt the substance with her hand, and it was "definitely a liquid." Record Document 38-2 p. 113:1-23.

Following the incident, Morein's granddaughter notified Costco's employee, Darieon Marshall ("Marshall"), that Morein had fallen. See Record Document 38-8 p. 23:18-24. During that time, Marshall allegedly stated that he had "known about it" and he "had seen it," referring to the liquid on the floor. See id. at p. 26:4-19. In Marshall's written statement, he identified the "wet spot" as "soda from the soda machine." Record Document 38-5. At 1:31:04 P.M. the surveillance footage shows Marshall walking to the

exact location where Morein fell and wiping the area surrounding the incident. See Record Document 32-7.

While the surveillance footage fails to depict the alleged puddle, Morein's description of the substance as a liquid that may have been "diluted coke", accompanied by Marshall's statement that "the wet spot was soda from the soda machine", arguably removes any uncertainty as to the precise nature or source of the liquid substance on which Morein slipped. Thus, a reasonable juror could find that that the soda on the food court floor created a hazardous condition that was more likely than not the cause of Morein's injury.

As for Costco's argument that there is no evidence it created the alleged condition or had actual or constructive knowledge of the condition that caused Morein's injury, the Court likewise finds that when viewing the facts in the light most favorable to Morein, a reasonable jury could conclude that Morein satisfies her burden of proof. See Celotex, 477 U.S. at 324.

Morein alleges that surveillance footage constitutes positive evidence that no spill event occurred between 12:56 P.M. and Morein's fall. See Record Document 38. Because no spilling event is clearly observed in the 33 minutes of footage leading up to the incident, Morein argues that the hazardous condition, i.e., the puddle of soda, must have existed for at least 33 minutes prior to Morein's fall. See id. Because both Costco and Marshall identified the only possible source of liquid to be soda spilled by a Costco member traversing the area, Morein argues she is entitled to an inference that the spill must have been on the floor for some time. See id. In Morein's view, the video serves "as positive evidence of the temporal element of constructive notice—namely, that the soda was on

the floor for at least 33 minutes before the fall." Record Document 38. Ultimately, Morein argues that "[a] reasonable juror could easily conclude that 3.5 hours of soda machine traffic coupled with the lack of evidence of any acute spill immediately or prior to [Morein's] fall signifies that the soda puddle was on the floor for at least 'some period of time.'" Id.

In furtherance of her argument that Costco had constructive notice of the hazardous condition, Morein alleges that the condition existed for such a period of time that it would have been discovered if Costco had exercised reasonable care. See id. Again, Morein directs the Court to Costco's 33 minutes of surveillance footage leading to the incident. See id. The video depicts various different unidentified Costco employees who entered the food court prior to Morein's fall, none of whom stopped to inspect the floor or look for hazards. Marshall crossed the food court multiple times in the 33 minutes leading up to Morein's fall. At 1:24:07 P.M., Marshall is captured walking through the food court, seemingly looking directly at the exact area where Morein ultimately fell minutes later. Marshall did not stop to inspect the area or remove the alleged hazard.

Interestingly, Marshall is seen sitting in the hallway with his cleaning cart during the time he was supposed to be performing the hourly floor walk, which is designed to identify and remove hazardous conditions to prevent injuries to customers. One minute before Morein's fall, Marshall is seen walking directly past the soda machine, without stopping.

Morein asserts that each time an employee crossed the food court there was an opportunity to remove the hazard. See Record Document 38. Further, Morein argues that the evidence does not show a missed opportunity, but instead, shows a pattern. In Morein's view, "Costco employees repeatedly passed through one of the highest-risk

areas of the warehouse without conducting any meaningful inspection while the one employee assigned to perform the documented floor walk spent a portion of his inspection of [the food court] sitting in the hallway." Id. Thus, Morein argues that a reasonable jury could conclude that Costco failed to exercise reasonable care and that the incident giving rise to this litigation could have been prevented. See id.

Morein also alleges that the surveillance footage, along with Morein's granddaughter's testimony, gives rise to a genuine issue of material fact regarding whether Costco, through Marshall, had actual knowledge of the hazardous condition prior to Morein's fall. Id. Specifically, Morein argues that a jury must determine how it was that Marshall knew exactly where the spill was located. Id. Although Morein's granddaughter testified that she told Marshall the spill was "by [their] table," the footage does not show any member of Morein's family directing him to the exact location of her fall. Id. Moreover, a plain reading of Marshall's deposition testimony (Record Document 38-3) and his written statement (Record Document 38-5) indicates that he was unaware of Morein's fall and therefore did not witness the incident. Yet, Marshall walked directly to the precise spot where the fall occurred and immediately began cleaning. Morein alleges that Marshall "[did] not hesitate, search the area, or inspect the floor to locate the spill. He already knew exactly where to go." Record Document 38. Thus, Morein argues that the surveillance footage permits a reasonable inference that Marshall knew the precise location of the spill.

Morein also asserts Marshall's response to Morein's granddaughter further indicates he had knowledge of the hazardous condition. See Record Document 38. Marshall allegedly told the granddaughter he was "headed to get a mop," and that he "had

known about it," and that he "had seen it," referring to the liquid on the floor. Record Document 38-4 p. 26:6-17. Marshall does not dispute that this conversation occurred. When asked during his deposition whether he remembered speaking with Morein's granddaughter, he testified that he did not recall. See Record Document 38-3 p. 47:13-15. As a result, Morein argues that a reasonable jury could conclude that Marshall observed the spill minutes before Morein's fall, failed to address it, and that his prior knowledge explains why he later walked directly to the precise spot of the soda spill without first searching for the hazard or anyone directing him to exactly where it was located. See Record Document 38.

Lastly, Morein urged the Court to defer ruling on Costco's Motion for Summary Judgment "until it orders the production of the communications and documents between Costco and Gallagher Bassett—or at a minimum, require Costco to produce a privilege log identifying those materials." Record Document 38; see also Record Document 53. Morein asserts that because Gallagher Basset led the investigation, it may have additional or new information that would be dispositive of some of the issues raised in Costco's Motion for Summary Judgment. See id. For example, Costco's retention policy recommends preservation of two hours of surveillance footage, and it is still undetermined whether Gallagher Bassett received the complete two hours of surveillance footage and whether it contains any additional information concerning how or when the spill occurred. See id.

Notably, Costco failed to comply with the Court's order that it produce the non-privileged Gallagher Basset documents within 14 days of June 3, 2025, together with a privilege log, identifying any documents withheld from production. See Record

Documents 30 & 53. Judge Whitehurst's June 3, 2025, order was subsequently affirmed by Judge Hicks on July 13, 2026. See Record Document 44. On August 25, 2026, Judge Whitehurst ordered Costco to provide the withheld Gallagher Bassett documents to the Court for in camera review by September 2, 2026. See Record Document 62. On September 8, 2026, Judge Whitehurst issued an order requiring Costco to produce specified correspondence with Gallagher Basset within seven days. See Record Document 64. Among the materials Judge Whitehurst ordered to be produced is the video surveillance footage Costco provided Gallager Basset. See id. It is unclear as to whether the video surveillance provides any new or dispositive information.

Overall, viewing the evidence currently before the Court, in the light most favorable to Morein, a reasonable jury could conclude that the soda spill remained on the floor long enough to be discovered through the exercise of reasonable care, that Costco's employees had multiple opportunities to discover and remove the hazard, and that Marshall knew about the spill prior to Morein's fall. See Thompson, 2 F.4th at 467. Those are all factual disputes that must be resolved by a jury. Id. As a result, Costco's Motion for Summary Judgment is hereby **DENIED**.

**CONCLUSION**

Accordingly, genuine issues of material fact remain such that this case must proceed to trial.

**IT IS ORDERED** that Costco's Motion for Summary Judgment (Record Document 32) is **DENIED**.

An Order consistent with the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 30th day of September, 2026.

JUDGE S. MAURICE HICKS, JR.
UNITED STATES DISTRICT COURT